HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS M. BROUNER and SUZANNE L. BROUNER (formerly known as Suzanne L. Clark) and the Marital Community comprised thereof,

Plaintiffs,

v.

FARMERS INSURANCE COMPANY OF WASHINGTON, INCORPORATED,

Defendant.

CASE NO. C10-5103

ORDER

THIS MATTER comes before the Court on cross motions for summary judgment and an alternative motion for partial summary judgment from defendant. The Court has reviewed the materials for and against said motions. Oral argument is not necessary to resolve these motions.

Defendant's Motion for Summary Judgment [Dkt. #20] alleges that plaintiffs failed to submit a timely signed <u>and</u> <u>sworn</u> proof of loss and are therefore barred from recovery. For the reasons given below, that motion is **DENIED**.

In the alternative, defendants seek partial summary judgment eliminating claims for damages resulting from a prior flood and for overhead and profit claimed in connection with that flood for which defendants should receive a credit in connection with the claim for the 2009 flood. Plaintiffs admit that these two allegations are true and Defendant's Motion for Partial Summary Judgment [Also Dkt. #20] is **GRANTED**.

Plaintiffs ask that summary judgment be granted in their favor in the amount of the filed claim less the off-set for the costs attributable to the prior flood. [Dkt. #24]. Because plaintiffs claim additional charges from 2006 as an off-set to the admittedly erroneous claim for overhead and profit, their motion for summary judgment must be DENIED.

## BACKGROUND

Pursuant to the National Flood Insurance Program ("NFIP"), Farmers issued to Suzanne Brouner a Dwelling Form Standard Flood Insurance Policy ("SFIP") bearing policy number 8702055817 for the property located at 14002 70th St. E., Sumner, Washington. The subject SFIP had an effective policy period from June 28, 2008 through June 28, 2009. Said policy provided building coverage limits of $114,000 subject to a $500 deductible. Plaintiffs did not purchase contents coverage.

On January 8, 2009, the Puyallup River overran its banks causing flooding to plaintiffs' property. Upon receipt of plaintiffs' notice of loss, Farmers commenced the process of adjusting the claims pursuant to the applicable federal rules promulgated by FEMA on authority of 42 U.S.C. § 4019. Farmers retained an independent adjusting company, Colonial Claims Corporation, to assist the insured as "a matter of courtesy only," in presenting her flood claim. Subsequent to the inspection by the Colonial

adjuster, Tyrone McGuire, the adjuster prepared an estimate and proof of loss forms which were submitted to plaintiffs for review. This initial estimate indicates the actual cash value of the loss to be $49,688.71 and recoverable depreciation of $21,564.42 for a total recommended claim amount (less deductible) of $71,721.42. The estimate clearly states that "This is an estimate of recorded damages and is subject to review and final approval by the insurance carrier." On or about March 9, 2009, Farmers received the Proof of Loss forms purportedly signed by Suzanne Brouner on February 14, 2009. The Proof of Loss is not notarized, but is witnessed by Dennis Brouner.

The executed Proof of Loss and building estimate were presented to Farmers for review. Upon review of these documents, it was determined that the plaintiffs had a prior flood loss for which a total of $43,118.01 was paid to the insured. Farmers requested that McGuire prepare a revised estimate because no evidence was presented to substantiate that the 2006 flood damages had been repaired prior to the 2009 flood. As a result, Mr. McGuire prepared an adjusted estimate which indicated an actual cash value of $13,221.67 and recoverable depreciation of $2,366.15 for a total of $15, 587.72. This amount was paid to the insured, Suzanne Brouner and Washington Mutual Bank, the mortgagee on April 9, 2009. On that same date, Farmers rejected the plaintiffs' Proof of Loss in the amount of $49,688.71 and the Replacement Cost Proof of Loss in the amount of $21,564.42 based upon lack of evidence of repairs of the 2006 flood damage to plaintiffs' dwelling. This lawsuit was filed on January 7, 2010.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would

preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## **DISCUSSION**

**I.      Plaintiffs' Proof of Loss Met the Strict Requirements Imposed by the National Flood Insurance Program**

Plaintiffs prepared and signed the Proof of Loss form designed by FEMA to comply with the strict requirements imposed by the National Flood Insurance Program. The precise requirements for preparing and processing a claim under the NFIP are spelled out in the Federal Register.  They provide:

> J.  Requirements in Case of Loss
>
> In case of a flood loss to insured property, you must:
> 1. Give prompt written notice to us;
> 2. As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;
> 3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts, and related documents;

    4.  Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy ***signed and sworn to by you***, and which furnishes us with the following information:
        a.  The date and time of loss;
        b.  A brief explanation of how the loss happened;
        c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
        d.  Details of any other insurance that may cover the loss;
        e.  Changes in title or occupancy of the covered property during the term of the policy;
        f.  Specifications of damaged buildings and detailed repair estimates;
        g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
        h.  Details about who occupied any insured building at the time of loss and for what purpose; and
        i.  The inventory of damaged personal property described in J.3. above.
    5.  In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.
    6.  You must cooperate with the adjuster or representative in the investigation of the claim.
    7.  The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.
    8.  We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.
    9.  At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

44 CFR Part 61, App. A(1), Art. VII (J).

Because flood losses are paid out of the National Flood Insurance Fund, a claimant under a SFIP must comply strictly with the terms and conditions that Congress has established for payment. *Flick v. Liberty Mut. Fire Ins. Co.,* 205 F.3d 386, 395 (9th Cir. 2000). The payment of claims from the federal treasury implicates federal sovereignty. Not even the temptations of a hard case may provide a basis for a recovery that is contrary to federal regulations. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 386 (1947).

ORDER- 5

1   Defendant seeks dismissal of plaintiffs' claim for insurance benefits by arguing
2   that they failed to comply with the conditions precedent set forth in Article VII(J).
3   Defendant contends that plaintiffs' failure to have Suzanne Brouner's signature notarized
4   invalidates the Proof of Loss form, thereby triggering rejection of the claim.  Defendant is
5   wrong.  Defendant cites no case law in support of its argument that a sworn Proof of Loss
6   requires notarization.

7   The precise language of the regulation requires that within 60 days after the loss,
8   the insured must send to the insurance carrier "a proof of loss which is your statement of
9   the amount you are claiming under the policy signed and sworn to by you [the insured]
10  and which furnishes us [the insurer] with the following information: . . .".  44 CFR Part
11  61, App. A.(1), Art. VII(J)(4).  The alleged deficiency is that Suzanne Brouner did not
12  sign and swear before a notary public but rather signed and swore before her husband,
13  acting as a witness.  The FEMA Proof of Loss form given to the Brouners provided space
14  to list the required information followed by a signature line for the insured.  Immediately
15  below the insured's signature line is the following phrase: "Subscribed and Sworn before
16  me this __ day _____, 20__".  Immediately below is a signature line for a notary public.

17  Dennis Brouner signed, acknowledging his wife's subscription and swearing.  He
18  crossed out the words "Notary Public" and wrote "witness".  Defendant asserts that
19  because a notary public was not employed for the task, the subscription and swearing
20  does not count.  But the precise and strictly construed language of the regulation giving
21  rise to the Proof of Loss form does not prescribe who must be present at the swearing, it
22  only requires that the insured swear to the accuracy of the information provided.
23  Suzanne Brouner did subscribe and swear before her husband who witnessed the act.

24

ORDER- 6

According to Black's Law Dictionary, "subscription" means the act of signing one's name on a document. A "notary public" is a person authorized by a state to administer oaths, certify documents, attest to the authenticity of signatures. "Witness" is identified as one who sees, knows or vouches for something (i.e. as a witness to a testator's signature). Black's Law Dictionary (8th ed.)

Inasmuch as the controlling regulation does not prescribe who must be present when the Proof of Loss form is sworn to, and given that there is substantial overlap in the common definitions and function of a "notary public" and a "witness", the Proof of Loss form signed and sworn to by Suzanne Brouner and witnessed and vouched for by Dennis Brouner met the strict requirements of the NFIP and must be accepted as a valid Proof of Loss when submitted.

Defendant's reference to cases where no Proof of Loss form (signed or unsigned) was timely submitted is not persuasive given the unique facts of this case. In *Flick v. Liberty Mutual Fire Ins. Co.,* 205 U.S. 927 (2000), the insured did not file a sworn proof of loss until nine months after the loss. In *Oppenheim v. FEMA,* 851 F.2d 360 (9th Cir. 1988), and *Allender v. Farmers Insurance Exchange*, 2005 WL 2922.051 (W.D. Wash. 11/4/05), no Proof of Loss was ever filed. And in *Wagner v. FEMA,* 847 F.2d 515 (9thCir. 1988) some plaintiffs failed to file any proof of loss while others failed to meet the 60-day time limit. Strict adherence to the requirements of federal regulations caused each court to reach the unremarkable conclusion that the claim must fail. None of the holdings, however, provide guidance to this Court beyond the basic principle that conditions precedent imposed by law must be strictly followed if an insured is to receive federal funds for a flood loss covered under the NFIP. Here, the Brouners did strictly

1  comply with the requirement of submitting a signed and sworn Proof of Loss in a timely
2  fashion.  Defendant's motion for summary judgment (Dkt. #20) is DENIED.

3  **II.     Plaintiff's Claim is Subject to Certain Offsets**

4  Because plaintiffs acknowledge that certain damages incurred in connection with
5  the 2006 flood were either wrongfully claimed in the Proof of Loss for the 2006 flood
6  (overhead and profit for a contractor who was not used) or wrongfully claimed in the
7  Proof of Loss for the 2009 flood (unrepaired damages from the 2006 flood), defendants'
8  motion for partial summary judgment is GRANTED.

9  **III.    Plaintiffs' Motion for Summary Judgment**

10 Numerous issues involving offsets make it impossible to grant plaintiffs' motion
11 for summary judgment at this time.
12 The parties are reminded that according to the Scheduling Order (Dkt. #12)
13 settlement was to be held in this case by January 13, 2011 and 39.1 Mediation is to occur
14 by February 14, 2011.
15 It is so ORDERED.
16 DATED  this 1st day of February 2011.

                                  RONALD B. LEIGHTON
                                  UNITED STATES DISTRICT JUDGE